UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| JESSIE HAMPTON, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | No. 4:18CV00763 ERW |
| | ) | |
| UNITED STATES, | ) | |
| | ) | |
| Respondent. | ) | |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Petitioner Jessie Hampton's pro se Motion under 28 U.S.C. § 2255 To Vacate, Set Aside, or Correct Sentence [ECF No. 1], and his Amended Motion To Vacate, Set Aside, or Correct Sentence [ECF No. 6].

**I.   BACKGROUND**

On November 6, 2013, Petitioner pleaded guilty to one count of being a felon in possession of a firearm, in violation of 18 U.S.C § 922(g)(1) (Count One); one count of distributing cocaine base, in violation of 21 U.S.C § 841 (Count Three); and one count of possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C § 924(c) (Count Five).[1]

The following conduct forms the basis of Petitioner's 2013 plea: On June 25, 2013, St. Louis Metropolitan Police officers responded to a call for an armed robbery in the 5100 block of Maple where they observed a parked Lincoln MKX. As the officers approached, the driver, Petitioner, fled in the vehicle. After Petitioner crashed the MKX, he fled on foot and was

---

[1] *See United States v. Jessie Lee Hampton*, 4:13CR309 SNLJ ("2013 criminal case"). The Court will indicate citations to the criminal docket ("CD") in this case as 2013 CD ECF.

1

apprehended. The officers recovered marijuana, cocaine, cocaine base (crack) and firearms from the MKX and a gym bag discarded by Petitioner.

In exchange for Petitioner's plea, the United States agreed "no further federal prosecution will be brought in this District relative to defendant's following actions, of which the Government is aware at this time: being a felon in possession of a firearm, possessing with intent to distribute cocaine, cocaine base (crack), and marijuana, and possessing a firearm in furtherance of drug trafficking crimes, all on June 25, 2013." (2013 Plea Agreement, CD ECF No. 58 at ¶ 2(A)). On February 13, 2014, Petitioner was sentenced to an aggregate sentence of 90 months.[2]

While incarcerated, on March 2, 2016, Petitioner was indicted by a federal grand jury with (1) conspiring with Malcolm Johnson on or about July 14, 2012, to distribute cocaine, in violation of 21U.S.C § 841(a)(1) (Count One); (2) discharging a firearm in furtherance of the drug trafficking crime in Count One, resulting in the murder of Scipio Vaughn, in violation of 18 U.S.C §§ 924(c) and (j) (Count Two): (3) conspiring with Johnson to rob Vaughn, Jason Crabtree, and Aaron Crump of currency intended for the purchase of cocaine on July 14, 2012, in violation of 18 U.S.C §1951(a) (Count Three); (4) discharging a firearm in furtherance of the robbery in Count Three, resulting in the murder of Vaughn, in violation of 18 U.S.C §§ 924(c) and (j) (Count Four); and (5) being a felon in possession of a firearm on July 15, 2012, in violation of 18 U.S.C § 922(g)(1) (Count Five).[3]

Petitioner pleaded guilty to Count Four in exchange for the United States' dismissal of the remaining charges against him the 2016 Indictment. The parties stipulated to the following

---

[2] Thereafter, the applicable guideline range was reduced by Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G") and the judgment was amended to 84 months' imprisonment.
[3] *See United States v. Jessie Hampton*, 4:16CR93 ERW ("2016 criminal case"). The Court will indicate citations to the criminal docket ("CD") in this case as 2016 CD ECF.

facts forming the basis for the plea: In July 2012, Kevin Granderson and Aaron Crump agreed to arrange the sale of cocaine to Scipio Vaughn and Jason Crabtree. Granderson contacted his associates, Malcolm Johnson, Damien Colbert and Petitioner. It was decided that Petitioner, Johnson and Colbert would sell approximately 27 ounces of cocaine to Vaughn and Crabtree for $27,000. On July 14, 2012, Granderson, Johnson, Colbert and Petitioner obtained the cocaine. Vaughn and Crabtree accumulated the $27,000 needed to purchase it.

Vaughn, Crabtree, and Crump met Petitioner, Granderson, Johnson and Colbert in downtown St. Louis in the early morning of July 15, 2012. Petitioner, Johnson and Colbert were armed with pistols and acted in concert to rob Vaughn and Crabtree of their $27,000. When Vaughn attempted to flee on foot during the robbery, Petitioner, with the use of his firearm, shot him twice from behind. Petitioner and Colbert robbed Vaughn, Crabtree, and Crump of the more than $27,000. Vaughn died shortly thereafter.

Petitioner appeared before this Court for sentencing on November 8, 2017. The Court sentenced Petitioner to a term of 264 months' imprisonment. The Court then ordered that the "sentence shall run concurrently with the sentence the defendant is currently serving from the Circuit Court, St. Louis, Missouri, Docket Numbers 1422-CR00459 and 1422-CR00461, and the United States District Court, Eastern District of Missouri, Docket Number 4:13CR00309 SNLJ. (2016 CD ECF No. 107)."[4]

On May 16, 2018, Petitioner filed his Motion To Vacate, Set Aside or Correct Sentence, asserting one ground for relief. Thereafter, Petitioner requested leave to file an Amended Motion

---

[4] Petitioner's convictions under Docket Number 1422-CR00459 are related to conduct occurring on June 25, 2013, for which Petitioner pleaded guilty in the 2013 criminal case (4:13CR00309 SNLJ). Petitioner's convictions under Docket Number 1422-CR00461 stem from conduct occurring on November 15, 2012, and are unrelated to the aforementioned state and Federal convictions.

3

To Vacate, Set Aside or Correct Sentence, stating four grounds for relief. The Court granted his motion. On August 24, 2018, the United States filed its Response to Petitioner's Motion (ECF No. 14) and asked the Court to (1) set for hearing Petitioner's first claim for relief, (2) appoint Petitioner counsel for the hearing, and (3) dismiss Petitioner's remaining Section 2255 claims. On September 24, 2018, the Court appointed counsel to represent Petitioner and he subsequently filed his Reply (ECF No. 20) to the United States's Response.

## II. STANDARD

A federal prisoner who seeks relief under 28 U.S.C. § 2255 on grounds "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence." 28 U.S.C. § 2255(a). In order to obtain relief under § 2255, the petitioner must establish a constitutional or federal statutory violation constituting "a fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Gomez*, 326 F.3d 971, 974 (8th Cir. 2003) (quoting *United States v. Boone*, 869 F.2d 1089, 1091 n.4 (8th Cir. 1989)).

Claims brought under § 2255 may be limited by procedural default. A petitioner "cannot raise a non-constitutional or non-jurisdictional issue in a § 2255 motion if the issue could have been raised on direct appeal but was not." *Anderson v. United States*, 25 F.3d 704, 706 (8th Cir. 1994). Claims, including those concerning constitutional and jurisdictional issues, unraised on direct appeal cannot subsequently be raised in a § 2255 motion unless the petitioner establishes "(1) cause for default and actual prejudice or (2) actual innocence." *United States v. Moss*, 252 F.3d 993, 1001 (8th Cir. 2001) (citing *Bousley v. United States*, 523 U.S. 614, 621-22 (1998)).

4

However, ineffective assistance of counsel claims may be raised for the first time in a § 2255 motion even if they could have been raised on direct appeal. *Massaro v. United States*, 538 U.S. 500, 504 (2003). This exception is in place to prevent petitioners from being forced "to raise the issue before there has been an opportunity fully to develop the factual predicate for the claim." *Id*. Additionally, a petitioner's attorney may serve as counsel for both the trial and appellate case, and it is unlikely that the attorney would raise a claim of his own ineffective assistance on appeal. *See United States v. Rashad*, 331 F.3d 908, 911 (D.C. Cir. 2003).

To excuse procedural default, a petitioner, raising a constitutional claim for the first time in a § 2255 proceeding, still must demonstrate cause and prejudice. *Anderson*, 25 F. 3d at 706. Ordinarily, issues that were raised and decided on direct appeal cannot be relitigated in a § 2255 motion. *United States v. Wiley*, 245 F.3d 750, 752 (8th Cir. 2001). Exceptions to this rule are recognized only upon production of convincing new evidence of actual innocence, and are available only in the extraordinary case. *Id*.

If the petitioner's claims are not procedurally barred, the Court must hold an evidentiary hearing to consider the claims "[u]nless the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir. 1994). A petitioner is entitled to an evidentiary hearing "when the facts alleged, if true, would entitle [the petitioner] to relief." *Payne v. United States*, 78 F.3d 343, 347 (8th Cir. 1996) (citation omitted). However, a court may dismiss a claim without a hearing "if the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Shaw*, 24 F.3d at 1043.

## III.  DISCUSSION

Petitioner asserts four grounds for post-conviction relief in his Amended Motion. In his

first ground, Petitioner claims he received ineffective assistance as his counsel erroneously advised him he would receive a concurrent sentence and significant jail time credit if he pled guilty to Count Four. In his Second and Third Grounds, Petitioner claims his counsel was ineffective for failing to object and appeal when the United States breached the 2013 Plea Agreement by charging Petitioner with gun and drug-related offenses in the 2016 Indictment. In his Fourth Ground, Petitioner alleges his counsel was ineffective for failing to object and file a notice of appeal when a witness was represented by his uncle in violation of Petitioner's due process rights.

To establish a claim for ineffective assistance of counsel, a defendant must show the counsel's performance was deficient and counsel's deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the first prong, the measure of an attorney's performance is "reasonableness under prevailing professional norms." *Id.* at 688. "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. To establish the second prong of prejudice, the defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. When a defendant has pled guilty, the defendant must demonstrate there is a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997) (citing *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). A court need not address both prongs of the analysis if the defendant makes an insufficient showing on either prong. *Strickland*, 466 U.S. at 697.

A guilty plea and representations made by a defendant during the plea-taking create a "strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997). When a defendant

admits he is satisfied with his lawyer, there were no threats or promises to induce him to plead, and he voluntarily admits his guilt, he has a "heavy burden" to show his plea was involuntary. *Id*. "Once a person has entered a guilty plea, any subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." *Tran v. Lockhart*, 849 F.2d 1064, 1068 (8th Cir. 1988).

### A. Ground I

In Petitioner's first ground, he alleges he received ineffective assistance of counsel because he was given incorrect information as to 1) the consecutive nature of his sentences, and 2) the amount of time he would receive as a credit for time served. Specifically, Petitioner states he was incorrectly advised by counsel that any sentence he received would run concurrently with the sentences he was currently serving in the St. Louis County Circuit Court[5] and the sentence imposed by this Court in his 2013 criminal case (4:13CR309 SNLJ). Petitioner also asserts counsel erroneously stated he would receive credit toward his sentence going back to his initial incarceration for 4:13CR309 SNLJ on February 13, 2014, which would give Petitioner four years of credit for time served. Petitioner asserts that he relied upon counsel's representations, and but for counsel's incorrect advice he would not have waived his rights, but instead would have proceeded to trial.

Petitioner argues his counsel's advice was erroneous as running his sentence in Count Four concurrently with the sentence he was serving in his 2013 Criminal Case violated the express language of 18 U.S.C. § 924. As noted above, in Count Four, Petitioner pleaded guilty to a violation of 18 U.S.C. § 924 (c) and (j). Consistent with Petitioner's request, the Court

---

[5] Docket Numbers 1422-CR00459 and 1422-CR00461.

ordered his sentence to run concurrently with the sentence he was currently serving from the Circuit Court and the United States District Court.[6] However, 18 U.S.C. § 924(c)(1)(D) requires the Court to sentence Petitioner to consecutive sentences on his conviction under this statute. The statute provides that:

> Notwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

18 U.S.C. § 924(c)(1)(D); *see United States v. Gregg,* 451 F.3d 930, 937 (8th Cir. 2006) (noting district court is "without discretion to impose concurrent sentences" for a § 924(c) conviction). The Court agrees the unqualified language of 18 U.S.C. 924(c)(1)(D) requires Petitioner's sentence to run consecutively, not concurrently, to the other sentences he was serving. Therefore, had counsel informed Petitioner that his sentence would run concurrently, he would have provided him with erroneous advice about his sentence.

Similarly, any assurance Petitioner would receive jail time credit commencing February 13, 2014, the date Petitioner was incarcerated in his 2013 Criminal Case, would constitute erroneous advice by counsel. The United States Department of Justice Bureau of Prisons ("BOP") has the authority to determine when a federal sentence commences. *United States v. Wilson,* 503 U.S. 329, 335, 112 S.Ct. 1351, 117 L.Ed.2d 593 (1992) ("After a district court sentences a federal offender, the Attorney General, through the BOP, has the responsibility for administering the sentence."); *United States v. Hayes,* 535 F.3d 907, 910 (8th Cir. 2008). In response to Petitioner's administrative remedy, he was informed by the BOP he would not receive credit for the time in case No. 4:13-CR-00309 dating back to February 13, 2014. The

---

[6] Docket Numbers 1422-CR00459 and 1422-CR00461, and the United States District Court, Eastern District of Missouri, Docket Number 4:13CR00309 SNLJ.

BOP determined Petitioner was not eligible to receive credit for time served going back to 2014, stating: "[a] concurrent sentence imposed by Judge Webber on November 8, 2017, does not mean the Bureau of Prisons can start a sentence imposed on November 8, 2017, to begin on February 13, 2014, when another federal sentence was imposed for [the 2013 criminal case]1:13CR00309-1 SNLJ." (ECF No. 1-2).

The Court finds Petitioner has sufficiently alleged his claim in Ground One that he received ineffective assistance of counsel. A defendant must be informed of the direct consequences of a guilty plea for the plea to be voluntary and intelligent. *George v. Black*, 732 F.2d 108, 110 (8th Cir. 1984). However, a defendant does not have to be informed of indirect or collateral consequences. *Id*. The difference between a direct consequence and a collateral consequence is "whether the result represents a definite, immediate and largely automatic effect on the range of the defendant's punishment." *Id*. (quoting *Cuthrell v. Dir., Patuxent Inst.*, 475 F.2d 11364, 1366 (4th Cir. 1973)). Here, Petitioner has alleged his counsel provided erroneous advice about the direct consequences of a guilty plea that would directly impact the range of his punishment. Thus, Petitioner has satisfied the first prong of deficient performance under *Strickland*. Additionally, Petitioner has established the prejudice required under the second prong of *Strickland* as he alleged but for his counsel's erroneous advice, he would not have pled guilty and would have insisted on proceeding to trail. *Matthews v. United States*, 114 F.3d 112, 114 (8th Cir. 1997). Thus, the Court finds Petitioner is entitled to an evidentiary hearing on Ground One.

### B. Grounds II and III

Grounds II and III both involve claims of ineffective assistance based upon Petitioner's allegation that the United States breached the 2013 Plea Agreement in case 4:13CR309 SNLJ.

9

Petitioner claims the government violated the language in its 2013 agreement that "no further federal prosecution will be brought by charging him with drug and gun related offenses in the 2016 Indictment. Petitioner argues these charges were precluded under the 2013 Plea Agreement because they stemmed from his conduct in his 2013 criminal case and occurred during the same time period. Petitioner states his counsel was ineffective for failing to object and appeal 1) the United States' breach of the 2013 plea agreement (Ground II) and 2) the prosecutor's misconduct in breaching the plea agreement (Ground III).

Petitioner's claims are contradicted by the record. First, the record refutes Petitioner's claim that the 2013 Plea Agreement precluded the government from charging him in 2016 as the conduct in both indictments occurred during the same time period. As set forth in the 2016 Indictment, the crimes charged occurred on July 14 and 15, 2012. In contrast, the crimes charged in the 2013 criminal case arose from events that occurred approximately a year later on June 25, 2013. Moreover, the language allegedly breached in the 2013 Plea Agreement explicitly limits itself to Petitioner's actions on June 25, 2013, and does not extend back a year as Petitioner suggests.[7]

The record also refutes Petitioner's assertion that the conduct he was charged for in 2016 is intertwined with the conduct forming the basis for his 2013 plea. Petitioner stipulated in his 2016 criminal case that he possessed and discharged a firearm in furtherance of conspiracies to distribute cocaine and commit robbery, causing the death of Scipio Vaughn. In contrast, the crimes charged in the 2013 criminal case arose from events that occurred approximately a year

---

[7] The Plea Agreement states "no further federal prosecution will be brought in this District relative to defendant's following actions, of which the Government is aware at this time: being a felon in possession of a firearm, possessing with intent to distribute cocaine, cocaine base (crack), and marijuana, and possessing a firearm in furtherance of drug trafficking crimes, *all on June 25, 2013*." (2013 Plea Agreement, CD ECF No. 58 at ¶ 2(A) (emphasis added)).

10

later,[8] in which Petitioner fled from and was apprehended by the police, who recovered pistols, marijuana, cocaine and crack. As such, Petitioner's 2016 charges are unrelated to the conduct that formed the basis of the 2013 Indictment. Therefore, the record contradicts Petitioner's allegation that the government breached the plea agreement. Accordingly, Petitioner's counsel is not ineffective for failing to advance a meritless argument. *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994). The Court finds Petitioner is not entitled to an evidentiary hearing on these claims and will dismiss Grounds II and III.

## C. Ground IV[9]

In his fourth ground, Petitioner alleges his counsel was ineffective for failing to object and file a notice of appeal when a witness was represented by his uncle in violation of Petitioner's due process rights. Petitioner claims he was prejudiced by this representation as counsel advocated a plea deal for his nephew, which disadvantaged Petitioner. Petitioner argues it was "not In The Best Interest of Justice" and the witness's uncle "should not have been allowed to enter his appearance" in any of the proceedings. (ECF No. 6 at 6).

Petitioner's claim has no merit. The witness's uncle did not enter an appearance in the instant case. Petitioner cites to no law in support of his proposition that a witness should not be

---

[8]The crimes charged in Petitioner's 2013 criminal case occurred on June 25, 2013. The crimes charged in Petitioner's 2016 criminal case occurred on July 14 and 15, 2012.

[9] In its Response, the United States argues that Grounds Four *and Five* should be dismissed. Petitioner, however, only asserts *four* grounds in his Amended Motion. The government's basis for a fifth ground for relief is drawn from a single sentence in Petitioner's Memorandum of Law in Support of his §2255 motion that, to the Court, seems to apply generally to all of Petitioner's claims. Petitioner appears to be setting forth law relevant to several of his claims in his motion, versus adding an independent ground for relief. As such, the Court will confine its analysis to the four grounds set forth in the Amended Motion. With regard to the Fourth Ground, the government characterizes it as a broad claim that Petitioner's counsel was ineffective for failing to file a notice of appeal. Ground Four of Petitioner's Amended Motion, however, more specifically discusses ineffective assistance of counsel based upon failure to object or appeal the representation of a witness by the witness's relative. The Court will address Petitioner's specific argument as to Ground Four in the following section.

permitted to retain a relative as counsel in proceedings against that witness. Nor does Petitioner explain how his constitutional rights were violated by the witness's representation in a separate proceeding or his counsel's assistance in obtaining a plea deal. As such, Petitioner's counsel is not ineffective for failing to advance a meritless argument. *Rodriguez*, 17 F.3d at 226. Because Petitioner's claim is inadequate on its face, Petitioner is not entitled to an evidentiary hearing ans the Court will dismiss Ground Four of the Amended Motion.

## IV. CONCLUSION

With one exception, Petitioner's Amended Motion To Vacate, Set Aside, or Correct Sentence [ECF No. 6] under 28 U.S.C. § 2255 is denied. With respect to that one exception, the Court finds that Petitioner is entitled to an evidentiary hearing on his claim under Ground I.

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Jessie Hampton's Amended Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [ECF No. 6] is **DENIED**, as to Grounds Two, Three, and Four.

**IT IS FURTHER ORDERED** that an evidentiary hearing will be held on February 11, 2019, at 10:00 a.m. as to Ground One of Petitioner's Motions.

**IT IS FURTHER ORDERED** that Petitioner's pending Motion to Furnish Movant with a Copy of Discovery (ECF No. 10) will be addressed at the forthcoming evidentiary hearing.

So ordered this 24th day of January, 2019.

_____
**E. RICHARD WEBBER
SENIOR UNITED STATES DISTRICT JUDGE**